UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARMINE POTESTA,<br><br>     Plaintiff,<br><br>v.<br><br>MICHAEL ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>     Defendant. | Civil Action No. 2:11-1654-SDW<br><br><br><br>**OPINION**<br><br>December 22, 2011 |

**Wigenton, District Judge,**

  Before the court is Plaintiff Carmine Potesta's ("Plaintiff" or "Potesta") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Brian H. Ferrie's ("ALJ") denial of Potesta's claim for Social Security Disability Insurance benefits ("SSDI") under 42 U.S.C. § 405(g).

  This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons stated herein, this Court **AFFIRMS** the Commissioner's decision.

**BACKGROUND**

Plaintiff was previously receiving Supplement Security Income benefits ("SSI") as a result of being diagnosed with post traumatic stress disorder ("PTSD"). (Pl.'s Br. 3.) In 2003, Plaintiff's SSI ceased as a result of Plaintiff being incarcerated. (*Id.*) On November 20, 2006, Plaintiff reapplied for SSI. (*Id.*) The Commissioner denied the application initially and upon reconsideration. (Pl.'s Br. 2-3.) Subsequently, Plaintiff requested a hearing before an ALJ, who on February 19, 2010, held that Plaintiff had neither a severe impairment nor a severe combination of impairments, and consequently, was not disabled. (*Id.* at 2.) Thereafter, Plaintiff appealed the ALJ's decision, and in September 2010 the Social Security Appeals Council denied Plaintiff's request for review, thus the ALJ's decision became final. (Def.'s Br. 2.) On September 14, 2011, Plaintiff filed an appeal with this Court. (Pl.'s Br. 1.)

Plaintiff, pursuant to 42 U.S.C. § 405B, seeks judicial review from the final administrative decision of the Commissioner denying his claim for Social Security Disability Insurance ("SSDI") benefits. (Pl.'s Br. 1) The Commissioner, pursuant to Federal Rule of Civil Procedure 12(c), seeks a judgment affirming his final decision that Plaintiff was not disabled, and thus, not eligible for SSI under Title XCI of the Social Security Act (the "Act"). (Def.'s Br. 1)

**FACTS**

  **A. Employment History**

Plaintiff was born on September 15, 1963. (Pl.'s Br. 3.) From 1980 to 2001 Plaintiff was employed as a waiter. (R. at 98.) As a waiter, Plaintiff took food orders, carried orders from the kitchen to tables and vice versa, and generally walked and stood

for seven hours. (R. at 99.) Plaintiff also frequently lifted eighty pounds during the workday. (*Id*.)

### B. Medical History

In September 2001 an ALJ found Plaintiff to be disabled beginning on August 21, 2001, thereby making Plaintiff eligible for SSI. (R. at 26-27.) In June 2003, Plaintiff was imprisoned for forty-one months, during which his SSI was suspended. (R. at 27.) Despite having been previously diagnosed with PTSD, Plaintiff did not see a psychiatrist while he was imprisoned. (R. at 33.) Plaintiff alleged that he did not seek mental help while in prison because he was in solitary confinement. (R. at 34.) Plaintiff did, however, seek treatment while in prison for stomach problems, diarrhea, and headaches. (R. at 149.)

In November 2006, upon release from prison, Plaintiff began seeing Rachel Markowitz ("Markowitz") from Meridian Behavioral Health as a preventive measure because he felt he was unstable and believed his health had deteriorated in prison. (R. at 31.) Markowitz started Plaintiff on 300 milligrams of Seroquel, and Xanax three times a day. (*Id*.)

At his hearing, Plaintiff alleged that due to the severity of his condition his medication was going to be changed because, "[he] need[ed] more stuff." (R. at 31.) Plaintiff stated that due to being shot in the stomach four times, his organs can only tolerate the medications prescribed for a certain time before they start affecting his liver. (R. at 32.) At the time of the hearing before the ALJ, Plaintiff was being tested to determine what medications would be suitable. (*Id*.)

### C. Daily Activities and Residual Functional Capacity

Plaintiff begins his day by eating breakfast, and then attending doctor appointments. (R. at 106.) Afterwards, he returns home, goes for a walk, eats dinner, takes a shower, and goes to sleep. (*Id.*) Plaintiff also spends about two hours a day doing basic cleaning and laundry. (R. at 107.) Plaintiff prepares his meals daily. (R. at 108.) Plaintiff goes outside daily. (*Id.*) He goes shopping for food, clothes, and basic necessities. (R. at 109.) Plaintiff does not drive because it frustrates him. (*Id.*) Plaintiff spends time daily watching television, reading, and relaxing. (*Id.*) Plaintiff also goes to the movies and church weekly. (*Id.*) However, Plaintiff alleges that he limits the time he spends with people because he cannot tolerate the stress. (R. at 110.)

### D. Medical Evidence

On December 27, 2006, Dr. Christopher Williamson ("Williamson"), a consultative psychologist, evaluated Plaintiff at the request of the Social Security Administration ("SSA"). (Def.'s Br. 3.) Williamson observed that Plaintiff's speech was clear, coherent, and goal directed. (*Id.*) His mood was sullen, depressed, anxious, and somewhat irritable. (Def.'s Br. 3.) Williamson also diagnosed Plaintiff with PTSD. (*Id.*)

On March 2, 2007, Dr. Michael D'Adamo ("D'Adamo"), a psychological consultant, reviewed Plaintiff's medical record and assessed that Plaintiff's depressive disorder and anxiety-related disorder did not meet any of the listed impairments[1]. (Def.'s Br. 3.) D'Adamo assessed that Plaintiff had mild restrictions in performing daily activities of living, maintaining social functioning, and in maintaining concentration, persistence, or pace. (*Id.*) D'Adamo opined that "[P]laintiff could handle three-step

---

[1] A claimant's impairment or combination of impairments must meet or medically equal the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. 416.920(d), 416.925, and 416.926.

directions, focus adequately upon routine job tasks, adapt socially in a job where the interpersonal demands were modest, and be productive in slower paced jobs where there was minimal coordination with others." (*Id.*)

On June 11, 2007, Plaintiff was evaluated at Riverview Medical Center. (Pl.'s Br. 5.) Plaintiff reported that he had significant anxiety and flashbacks to the time when he was shot, and that he was also stressed because his mother had a brain tumor. (*Id.*)

Plaintiff was also seen in the past by Dr. Brett Prince ("Prince") who diagnosed Plaintiff with PTSD and mixed personality disorder with borderline and antisocial traits. (*Id.*)

Markowitz treated Plaintiff for complaints of anxiety from June 11, 2007 through January 31, 2008. (*Id.*) Markowitz observed that Plaintiff's: (1) "mood was anxious"; (2) "thought process was somewhat tangential, but redirectable"; (3) "insight and judgment were fair"; and (4) "impulse control was adequate". (R. at 191-92.) Markowitz also diagnosed Plaintiff with PTSD, and intermittent explosive disorder. (*Id.*) From July 2007 through January 2008, Markowitz observed that Plaintiff's mental status had generally remained unchanged since her June 2007 examination. (R. at 194-197.)

In July 2007, Plaintiff told Markowitz that his mood was better, his girlfriend was moving in with him, he was sleeping better, and his medications were helpful. (R. at 194.) Plaintiff complained of stress due to work and that he could not keep a job due to his temper. (*Id.*) In September 2007, Plaintiff told Markowitz that he had lost his job as a waiter due to verbally lashing out at customers, but had found a new job. (R. at 195.) In November 2007, Plaintiff attended his daughter's twenty-first birthday party in

5

Florida. (R. at 196.) In January 2008, Plaintiff told Dr. Markowitz that he was attending culinary school. (*Id*.)

On January 31, 2008, Markowitz completed a medical questionnaire for the Monmouth County Division of Social Services. (R. at 184-87.) Markowitz determined that Plaintiff would be disabled for up to one year due to his anxiety disorder. (R. at 185.)

On August 17, 2010, after the ALJ's February 19, 2010 decision, Plaintiff's treating physician, Dr. Mark Seglia ("Seglia"), completed an exam on behalf of the State of New Jersey. .(Pl.'s Br. 6.) Seglia indicated that the Plaintiff suffered from bipolar and personality disorder. (*Id*.) Seglia also indicated that Plaintiff had severe mood disorders, oscillations, obsessive reflections and impulsive behavior. (*Id.*) Seglia stated that the length of disability was 12 months or more. (*Id*.)

### E. ALJ Decision

On July 20, 2009, Plaintiff had a hearing before ALJ Ferrie. (R. at 23.) The ALJ asked Plaintiff if there was additional information available regarding the duration of his condition. (R. at 35.) Plaintiff responded in the affirmative and stated that he would provide the information. (*Id.*) At this hearing Plaintiff noted that Dr. Prince had made a diagnosis of PTSD with explosive disorder. (*Id.*) The ALJ further noted that Plaintiff had "mixed personality disorder and all of the symptoms and signs consist[ent] with at least 8515 limitations as to sustained persistence." (*Id.*) The ALJ stated that if Plaintiff provided documentation indicating that the duration of Plaintiffs impairments meet the statutory requirement, he would rule in the Plaintiff's favor. (*Id*. at 16.) Plaintiff offered

6

to provide the ALJ with the additional documents regarding his condition no later than four days after the hearing. (*Id.*)

In November 2009 and January 2010, the Commissioner arranged for Plaintiff to undergo a psychiatric evaluation by a consultative psychologist; however, both times Plaintiff failed to attend his evaluation. (Def.'s Br. 2.) Subsequently, on February 19, 2010, the ALJ issued an unfavorable decision[2]. (R. at 13-19.)

**LEGAL STANDARD**

In social security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla;' it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is

---

[2] Plaintiff's Brief states the date of the ALJ's decision as February 18, 2010, however, the ALJ's decision on the record is dated February 19, 2010.

adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). The court is required to give substantial weight and deference to the ALJ's findings. *Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D.Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

**DISCUSSION**

An individual will be considered disabled under the Social Security Act (the "Act") if he or she is unable to "engage in any substantial gainful activity ("SGA") by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to her ailment have been "established by medically accepted clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." *Id*.

In order to establish a prima facie case of disability under the Act, a plaintiff bears the burden of demonstrating (1) that he was unable to engage in SGA by reason of physical or mental impairment that could have been expected to last for a continuous period of at least twelve months, and (2) that the existence of such impairment was demonstrated by evidence supported by medically acceptable clinical and laboratory techniques. *See* 42 U.S.C. § 1382c(a)(3).

In determining disability, the SSA utilizes a five-step sequential analysis. *See* 20 C.F.R. § 416.920; *See also Cruz*, 244 F. App'x. at 479. A determination of non-disability at steps one, two, four or five in the five-step analysis ends the inquiry. *See* 20 C.F.R. § 416.920. A determination of disability at steps three and five results in a finding of

9

disability. *See id.* If an affirmative answer is determined at steps one, two, or four the SSA proceeds to the next step in the analysis. *See id.*

At step one, the Commissioner must determine whether the claimant is engaging in SGA. *See* 20 C.F.R. 416.920(b). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. 416.972(a). "Gainful work activity" is work that is usually done for profit, whether or not profit is realized. *See* 20 C.F.R. 416. 972(b). If an individual engages in SGA, he is not disabled regardless of the severity of his physical or mental impairments. *See id.* If the individual is not engaging in SGA, the Commissioner proceeds to the next step. *See id.*

At step two, the Commissioner must determine whether the claimant has a medically determinable severe impairment or a severe combination of impairments. *See* 20 C.F.R. 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. *See* 20 C.F.R. 416.921. An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. *See id.* If the claimant does not have a severe impairment or severe combination of impairments, he is not disabled. *See* 20 C.F.R. 416. 972(c). If the claimant has a severe impairment or severe combination of impairments, the analysis proceeds to the third step. *See id.*

At step three, the Commissioner must determine whether the claimant's impairment or combination of impairments meets the criteria of an impairment listed in

10

20 C.F.R. Part 404, Subpart P Appendix 1.  *See* 20 C.F.R. 416.920(d), 416.925, 416.926.  If the claimant's impairment or combination of impairments meets the criteria of a listing and the duration requirement, the claimant is disabled.  *See* 20 C.F.R. 416.920(d).  If the claimant does not, the analysis proceeds to the next step.  *See id.*

After step three, but before considering step four, the Commissioner must first determine the claimant's residual functional capacity ("RFC").  *See* 20 C.F.R. § 416.920(e); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987).  An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  *See* 20 C.F.R. § 404.1545.  In making this determination, the Commissioner must consider all of the claimant's impairments, including impairments that are not severe.  *See* 20 C.F.R. § 416.920(e), 416.945.

At step four, the Commissioner must determine whether the claimant has the RFC to perform the requirements of his past relevant work.  *See* 20 C.F.R. 416.920(f).  "Past relevant work" means work performed within the fifteen years prior to the date that disability must be established.  *See id*.  If the claimant has the RFC to perform his past relevant work, the claimant is not disabled.  *See id*.  If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth step.  *See id.*

At step five, the Commissioner must determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience.  *See* 20 C.F.R. § 416.920(g).

The claimant bears the burden of persuasion in the first four steps.  *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 763 (3d Cir. 2009).  If the claimant establishes

11

that his impairment prevents him from performing any of his past work, the burden shifts to the Commissioner at step five to determine whether the claimant is capable of performing alternative, substantial, gainful, activity present in the national economy. *See* 20 C.F.R. § 416.920(g); *Kangas*, 823 F.2d at 777.

In this instant case, the ALJ only addressed the first two steps. The ALJ found that: (1) Potesta has not engaged in SGA since November 20, 2006, the date of the application; (2) Potesta has the following medically determinable impairments: affective mood disorder and anxiety; (3) Potesta's impairment does not significantly limit his ability to perform basic work related activities; and (4) Potesta, as of November 20, 2006, does not have a disability as defined in the Act. (R. at 15-19.)

On appeal, Plaintiff argues that the ALJ's decision was not based on substantial evidence as required by 42 U.S.C. § 405(g) and that the ALJ erred as a matter of law in evaluating the case. Plaintiff's argument has four grounds. First, Plaintiff argues that the ALJ violated the Third Circuit's rule set forth in *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 119-20 (3d Cir. 2000), when the ALJ held that Plaintiff did not meet the listings. Second, Plaintiff argues that the ALJ failed to comply with 20 C.F.R. § 404.1527 and *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999), by failing to accord weight to the opinion of Plaintiff's treating physicians. Third, Plaintiff argues that the ALJ failed to properly evaluate the Plaintiff's residual function capacity as required by *Burnett*. Last, Plaintiff argues that, the ALJ erred in properly evaluating Plaintiff's subjective complaints as required by Social Security Ruling 96-7P and *Schaudeck v. Commissioner,* 181 F.3d 429 (3d Cir. 1999).

The Commissioner, however argues that: 1) Plaintiff's impairment was not of listings-level severity; 2) the ALJ properly evaluated the medical evidence; 3) the ALJ properly evaluated Plaintiff's credibility; and 4) the evidence submitted to the appeals council following the issuance of the ALJ's decision provided no basis to change the ALJ's decision. *See generally*, Def.'s Br. For the reasons expressed below, this Court affirms the ALJ's decision because substantial evidence supports the ALJ's findings.

**Step One: Whether Potesta is Currently Engaging in Substantial Gainful Activity.**

As SGA is work that involves significant physical or mental activities and done for pay or profit. *See* 20 C.F.R. § 416.972(a)-(b). If a claimant is found to be engaged in SGA, the disability claim will be denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ determined that Potesta has not engaged in any SGA since November 20, 2006, the date of his SSI application. (R. at 15.)

**A. Step Two: Whether Potesta has a "severe" impairment or combination of impairments that affects his ability to do basic work activities.**

In executing step two, the ALJ must consider all symptoms and the extent to which these symptoms can reasonably be accepted with objective medical evidence and other evidence. *See* 20 C.F.R. 416.929. Under the applicable regulations, an impairment is severe only if it significantly limits the claimant's physical or mental ability to do "basic work activities," such as,

> physical abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, or mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). A "severe" impairment is distinguishable from "a slight abnormality," which has such a minimal effect that it would not be expected to interfere with the claimant's ability to work, regardless of his age, education, or work experience. *See Bowen*, 482 U.S. at 149-51. As previously stated, the claimant has the burden of showing that an impairment is severe. *Id*. at 146 n.5.

Here, the ALJ, determined that Plaintiff did not have a severe impairment or combination of impairments limiting his mental ability to do basic work. (R. at 16.) In assessing the severity of Plaintiff's affective mood disorder and anxiety disorder, the ALJ considered the four broad areas of functioning specified in the Commissioner's regulations for determining the severity of a mental impairment. (R. at 18.) The four areas of functioning are: (1) activities of daily living, (2) maintaining social functioning (3) maintaining concentration, persistence, or pace, and (4) episodes of decompensation. *See* 20 C.F.R. § 416.920a(b)(3). The ALJ, based on the evidence, properly assessed that Plaintiff did not have a severe impairment.

Regarding the first functioning area, D'Adamo assessed that Plaintiff had mild restrictions in performing daily activities of living. Plaintiff stated in his Function Report that, "he goes to doctors appointments . . . goes for a walk, eats dinner, takes a shower, and goes to sleep . . . spends about 2 hours doing basic cleaning and laundry. . .and prepares his meals daily." (R. at 106.) Plaintiff spends time daily watching television, reading, and relaxing. (*Id*.) Plaintiff also goes to the movies and church weekly. (*Id*.)

Regarding the second functioning area, Plaintiff, by his own actions has demonstrated the ability to maintain social functioning. In July 2007, Plaintiff reported to Markowitz that his mood was better and that his girlfriend was moving with him. (R.

at 194.) In November 2007, Plaintiff attended his daughter's twenty-first birthday party in Florida. (*Id*. at 196.) In January 2008, Plaintiff told Dr. Markowitz that he was attending culinary school. (*Id*. at 197.) Williamson also observed that Plaintiff's speech was clear, coherent, and goal directed. (R. 161.)

Last, regarding the third functioning area, D'Adamo observed that Plaintiff only had moderate limitations in accepting instructions and responding appropriately to criticism from supervisors; and getting along with co-workers. (*Id*. at 176-77.) D'Adamo concluded that Plaintiff could "handle three-step directions", "focus adequately upon routine job tasks", "adapt socially in a job where the interpersonal demands were modest", and "be productive in slower paced jobs where there was minimal coordination with others." (*Id*. at 178.)

In light of the evidence in the record, the ALJ's determination was proper.

### B. Step Three: Whether Potesta's Impairment Matches or is Equivalent to a Listed Impairment.

At step three, the ALJ must "compare the claimant's medical evidence to a list of impairments presumed severe enough to negate any gainful work." *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x. 376, 379 (3d Cir. 2004). This is an "argument which is entirely dependent upon the merits of [Plaintiff's] argument that the ALJ erred at [s]tep [t]wo." *Salles*, 229 Fed. App'x. at 145. When a claimant's impairments meet or equal a listing, "disability is conclusively established and the claimant is awarded benefits." *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). The Third Circuit requires the ALJ to "fully develop the record and explain his findings at step three." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000). The ALJ is required to issue more than just a conclusory statement that a claimant does not meet the listings. *See Fargnoli v.*

15

*Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (*citing Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d at 119-20). *Burnett* "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Padilla v. Comm'r of Soc. Sec.*, No. 09-2897, 2010 WL 2346650. at *5 (D.N.J. June 9, 2010) (citing *Jones v. Barnhart*, 364 F.3d 502, 505 (3d Cir. 2004)).

The ALJ, at step two, determined that Plaintiff did not have a severe impairment or combination of impairments that affected his ability to do work. (R. at 16.) Consequently, the ALJ did not conduct a step three analysis. A finding of non-disability at step two of the five-step analysis ends the inquiry. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007). Therefore, Plaintiff's argument that the ALJ failed to consider his RFC is misplaced.

**CONCLUSION**

For the foregoing reasons, the Court holds that substantial evidence supports the ALJ's decision. Accordingly, the Court **AFFIRMS** the judgment of the ALJ.


                                                                s/Susan D. Wigenton, U.S.D.J.


Orig:   Clerk
Cc:     Madeline Cox Arleo, U.S.M.J.
        Parties